**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-20130
Summary Calendar
_____


LAWRENCE D. STERN and RENEE FREEDMAN STERN,

                                        Plaintiffs-Appellants,


VERSUS

TRANSCONTINENTAL INSURANCE COMPANY,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-94-2383)
_____

September 4, 1996

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


        Lawrence and Renee Stern appeal the grant of summary judgment
in favor of Transcontinental Insurance Company.  Finding no error,
we affirm.

---

        [*]  Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

I.

The Sterns hired A.J. Homes, Inc. ("Homes"), to build their dream home, but Homes resigned as contractor before completing it. The Sterns filed suit in state court, alleging that Homes, *inter alia*, employed shoddy workmanship and substandard building materials; left the uncompleted house open to the elements, causing it to deteriorate to such an extent that the Sterns had to demolish it; made various misrepresentations; and slandered the Sterns' title.

Homes sought defense and indemnification from Transcontinental, its general liability insurer. Transcontinental declined coverage and refused to defend, however, and Homes settled the suit for judgment in the amount of $74,500 and an assignment of its claims against Transcontinental.[1]

The Sterns filed this action against Transcontinental, seeking to recover Homes's defense costs and to collect the judgment against Homes. After the parties filed competing motions for summary judgment, the district court granted Transcontinental's motion and denied the Sterns'.

_____

[1] The Texas Supreme Court recently prohibited the assignment of claims against insurance companies in similar circumstances. *See State Farm Fire & Casualty Co. v. Gandy*, No. 94-0781, 1996 WL 391215 (Tex. July 12, 1996). Assuming *arguendo* that *Gandy* would invalidate the instant assignment, we find that it does not apply to this case, as Homes transferred its claims before the supreme court decided *Gandy,* and Transcontinental did not preserve the error prior to that time. *See id.* at *30 (stating that the court's holding does not invalidate a prior assignment unless the insurance company already has preserved the error).

## II.

The Sterns contend that Transcontinental had a duty to defend Homes because (1) the Sterns' alleged damages fall within the policy's "products-completed operations hazard" coverage; (2) any exclusions apply only to defective work; (3) the policy's coverage for personal and advertising injury covers the Sterns' claims for slander of title; (4) the policy's provisions for personal and bodily injury provide compensation for the Sterns' mental anguish; (5) the Sterns' injuries were not substantially certain to follow from Homes's intentional conduct; and (6) Transcontinental's failure to assert various policy exclusions at the time that it denied coverage estopped it from relying upon them in this litigation.

The magistrate judge provided a thorough and well-reasoned Amended Memorandum and Recommendation that the district court adopted. We affirm essentially for the reasons stated in that memorandum, adding only the following comments.

## A.

The Sterns contend that deterioration of the unfinished residence caused by weather conditions constitutes an "occurrence."[2] The policy covers bodily injury and property damage only

---

[2] The Sterns' appellate briefs could be construed to assert that Homes's defective workmanship was an "occurrence" giving rise to a duty to defend. In their summary judgment briefs in the district court, however, the Sterns raised only claims stemming from weather damage and slander of title. Thus, the Sterns

if they result from an "occurrence," *see* Commercial General Liability Coverage Form [hereinafter "Policy"] § I.A.1.b(1), and it defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," *id.* at V.9. In addition, the policy excludes injuries that were "expected or intended from the standpoint of the insured" from coverage. *Id.* at I.A.2.a. Thus, the Sterns may recover only if the injury was not a "natural and probable" consequence of Homes's intentional actions. *See Bituminous Casualty Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1054 (5th Cir. 1996).

The Sterns argue that Homes could not have expected that the structure would deteriorate to such an extent that the Sterns would have to demolish it. In other words, while the injury was a natural and probable consequence of abandonment of the project, the *extent* of that injury was not.

There is little authority on point, but two cases hold that "[t]he requisite accident may inhere in the scope of damages." *See Hartford Casualty Co. v. Cruse*, 938 F.2d 601, 605 (5th Cir. 1991); *Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 503 (Tex. Civ. App.§§Texarkana 1979, no writ). While the present case involves a foreseeable injury to the house as a whole, however, *Cruse* and

_____

abandoned any argument based upon deficient performance of construction services by failing to present it. *See Cupit v. Whitley*, 28 F.3d 532, 535 & n.5 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1128 (1995) (holding that arguments not raised before magistrate judge issues his report and recommendation are waived).

*Volentine* involved defects in a discrete product that unexpectedly caused significant damage to a much larger entity. *See Cruse*, 938 F.2d at 602, 605 (defects in foundation of house that caused "extensive" damage to entire home); *Volentine*, 578 S.W.2d at 503 (malfunction of one valve that destroyed entire engine).

The holdings of *Cruse* and *Volentine* have only limited applicability outside of the products liability context. First, a defective product's destruction of a larger entity causes essentially two injuries: a likely one to the product itself and an unanticipated one to the larger entity. Second, it is reasonable to assume, in products cases, that damage beyond the specific product is often difficult to foresee. In the present case, however, there is a single, foreseeable injury.

Extending *Cruse* and *Volentine* to this case would radically expand the scope of insurance coverage. As it would be impossible to determine precisely how much damage to each part of the home is foreseeable, a builder could always argue that he reasonably expected slightly less damage than actually occurred. Extending coverage to such cases is counterintuitive: In general, the extent of an injury is relevant only to the *amount* for which a defendant is liable, not the threshold determination of liability itself.

In short, the principle that "[t]he requisite accident may inhere in the scope of damages" is sensible in the context of defective products, but it lacks a limiting principle in cases such

5

as the present one.  We agree with the magistrate judge that as "Homes'[s] intended conduct inevitably and predictably caused the weather deterioration," the ensuing damage did not result from an "occurrence."

B.

The Sterns contend that their claims fall within the policy's "products-completed operations hazard" coverage.  As the magistrate judge explained, however, the policy provides no such coverage.  Instead, the policy uses the expression "products-completed operations hazard" as a term of art in delineating various exclusions from the policy's coverage for, among other things, bodily injury and property damage.

The Sterns contend that the 1992 renewal declaration for the policy shows that the policy provides coverage for products-completed operations hazards.  First, they observe that under the heading "Limits of Insurance," the declaration specifies a "Products-Completed Operations Aggregate Limit" of $500,000.  The policy states that the "Products-Completed Operations Aggregate Limit" is the most that Transcontinental will pay *under the coverage for bodily injury and property damage* if the liability falls within the definition of "products-completed operations hazard."  *See* Policy § III.3.

Second, they point to a portion of the declaration showing a

premium paid for "ContractorsSSExecutive Supervisors or Executive Superintendents Including Products and/or Completed Operations." Once again, however, the declaration simply reflects that coverage for bodily injury and property damage includes coverage for completed operations; it in no way purports to override the policy's requirement of an "occurrence."

As the Sterns have not shown that their damages resulted from an "occurrence," they are not entitled to recover for injury resulting from completed operations.  The judgment is AFFIRMED.